Sol Luis Descartes, in his capacity as Treasurer of Puerto Rico, Petitioner, *v.* Tax Court, Respondent; Juan Dávila Díaz, Intervener.

No. 287.   Argued December 10, 1952.—Decided March 29, 1957.

*Víctor Gutiérrez Franqui, Attorney General* (in petition for certiorari), and *J. B. Fernández Badillo, Acting Attorney General,* and *José A. García Malpica, Assistant Attorney General,* for petitioner. *Brown, Newsom & Córdova* for intervener, plaintiff in the main action.

MR. JUSTICE NEGRÓN FERNÁNDEZ delivered the opinion of the Court.

On August 3, 1950, the Treasurer of Puerto Rico determined an income-tax deficiency of $3,789.27 against Juan Dávila Díaz for the taxable year 1942. The origin of this deficiency was as follows: the taxpayer declared in his income-tax return for the year 1942 the sum of $4,734 as profits from "Quintero y Dávila, Limitada," a partnership (*sociedad*). The Treasurer corrected this item increasing it to $10,207.17. The difference between this sum and the amount reported in the tax return represented the taxpayer's share in the *undistributed* profits of "Quintero y Dávila, Limitada" for the said year.

In determining the deficiency, the Treasurer considered that, according to our decisions in *Buscaglia, Treas.* v. *Tax Court,* 69 P.R.R. 700 and 70 P.R.R. 364, the taxpayer was bound to pay tax on his share in the undistributed profits of "Quintero y Dávila, Limitada," which he considered as a partnership (*sociedad*) included in § 2 (*a*) (3) of the Income Tax Act of 1924 (Sess. Laws 1925, p. 400), as amended by

Act No. 31 of April 12, 1941 (Sess. Laws, p. 478), which is the law applicable to the case.

Feeling aggrieved, the taxpayer appealed to the former Tax Court challenging the tax deficiency, alleging that "Quintero y Dávila, Limitada" was, in the taxable year 1942 and thereafter, pursuant to the terms of the deed of constitution, a limited partnership (*compañía limitada*), included in § 2(a)(2) of the Act, and that by express provision of the statute it should be considered, for tax purposes, as a *corporation;* and that, consequently, he was not bound to include in his individual tax return, pursuant to the provisions of §§ 4(a) and 15 of the Act, *the profits which were not distributed* by it in that year.

In his answer to the complaint, the Treasurer maintained, in accordance with his previous determination, that "Quintero y Dávila, Limitada" was a *partnership* (*sociedad*) within the meaning of this term as used in the said Act— § 2(a)(3)—and that, as such, its members were bound to pay income tax on the undistributed profits. In his brief in the lower court he maintained that, although the firm used the word "limited" in its firm name, it was merely a *special* partnership (*sociedad en comandita*), and that the clause in the deed of constitution which limited the liability of the members to their respective contributions to the corporate capital was null and void.

The Tax Court sustained the complaint and, at the request of the Treasurer, we issued a writ of certiorari to review the judgment rendered. The question for decision in this appeal is exactly the same one which gave rise to the controversy between the parties in the lower court: whether "Quintero y Dávila, Limitada" constitutes, for the purposes of the tax law, a partnership (*sociedad*) or a *corporation*.

I

██ We turn to consider, in the first place, the pertinent provisions of the Act.

Section 2(a)(2) of the Income Tax Act of 1924, as amended by Act No. 31 of April 12, 1941, which has been in force since January 1, 1940, provides:

"(2) The term 'corporation' includes limited partnerships, joint stock companies, limited liability joint stock companies (*sociedades anónimas*), private corporations and insurance companies, and any other associations receiving income or making profits taxable under this Act. The terms 'association' and 'corporation' include, in addition to other similar entities, any organization created for the purpose of carrying out operations, or accomplishing certain ends, and which, in like manner as corporations, may continue to exist regardless of the changes in the membership thereof, or in the persons sharing therein, and whose business is managed by one person alone, a committee, a board, or any other organization acting in a representative capacity. The terms 'association' and 'corporation' include voluntary associations, business trusts, Massachusetts trusts, and common law trusts."

Section 2(a)(3) of the Act, also amended by Act No. 31 *supra*, provides:

"(3) The term 'partnership' includes civil, business, industrial, agricultural and professional partnerships or of any other kind, whether or not its constitution is set forth by public deed or private document; and it shall include, further, two or more persons, under a common name or not, engaged in a joint venture for profit."

And § 4(a), likewise amended by Act No. 31 *supra*, provides: [1]

"The term 'dividend' when used in this title except when used in paragraph (8) of subdivision (a) of section 32 and paragraph (3) of subdivision (a) of Section 43 shall mean any distribution made by a corporation to its shareholders, whether in money or in other property, out of its earnings or profits accumulated after February 28, 1913, or out of the returns, earnings or profits obtained during the taxable year, computed

---

[1] This section was reamended by Act No. 424 of May 13, 1951 (Sess. Laws, p. 1132) as to the meaning of the term "earnings," limiting the same to "any *distribution made* by a partnership [*sociedad*] to its partners and participants. . . ." (Italics ours.)

at the close of the taxable year without making any deductions for any distribution made during the taxable year, regardless of what the amount of the earnings, returns, or profits might have been or were at the time the distribution was made. The term 'earnings' shall mean any *share or right to share in a partnership,* which belongs to its partners or participants in each taxable year out of the earnings or profits of any partnership." (Italics ours.)

It is well to point out now that the Income Tax Act of 1924, prior to January 1, 1940—date of effectiveness of the amendments made in § § 2 and 4, above copied, by Act No. 31 *supra*—included in the term "corporation," in its § 2(a)(2), limited partnerships (*compañías limitadas*), joint stock companies, limited liability joint stock companies, (*sociedades anónimas*) private corporations and insurance companies, but *did not include associations,* which were included, according to § 2(a)(3) of the Act, before it was amended, within the term "partnership" (*sociedad*). Section 4(a), until December 31, 1939, when it was amended by Act No. 31, did not establish any difference between *dividends* and profits of corporations and the earnings of *partnerships* (*sociedades*), as to the time in which the shareholders and partners, respectively, were bound to pay tax thereon in either case. In both cases they paid taxes only after they were distributed.[2] However, as of January 1, 1940, as a result of the changes made in the original Act by Act No. 31, there arose different tax consequences for those persons entitled to the profits of a partnership (*sociedad*). *Buscaglia, Treas.* v. *Tax Court,* 69 P.R.R. 700; 70 P.R.R. 364.[3] The term "earnings" was

---

[2] The Regulations of May 17, 1926, for the administration of the Income Tax Act of 1924, contained in art. 90 a provision to the effect that "the distributive share of the profits of a partner in a partnership [*sociedad*] is regarded as received by him although not distributed." This regulatory provision, however, was declared null and void by this Court in *Behn* v. *Domenech, Treas.,* 49 P.R.R. 790.

[3] As may be seen from the definition of the term *sociedad* in § 2(a)(3), which does not have the same meaning as the term *partnership* at common law, the tax statute employs that term in the same conventional manner that § 2(a)(2), employs the term *corporation*. According to § 2(a)(3), we

enlarged in § 4(a) to mean, as has been noted, "any share or right to share in a partnership [*sociedad*], which belongs to its partners or participants in each taxable year out of the earnings or profits of any partnership."

It is well to point out that, while by that amendment the Legislature brought about different tax consequences as to the undistributed earnings of a partnership (*sociedad*), at the same time it expressly left within the term *corporation,* among others, the *limited partnerships* (*compañías limitadas*), and included therein, for the first time, *associations* of any kind, which had been included theretofore in the term *partnership* (*sociedad*). The amendments of Act No. 31 were not therefore enacted in a vacuum. The tax consequences affecting the persons with the right to share in the earnings—undistributed—of a *partnership* (*sociedad*) were not intended for those persons having the right to share in the earnings and profits of the other entities and organizations expressly mentioned in § 2(a)(2) of the Act, or included in the general acception of *associations*, according to that same section.

## II

■■■ Let us consider, in the second place, the structure and operation of "Quintero y Dávila, Limitada" under its deed of incorporation.

From deed No. 33, executed September 16, 1937, before notary Gustavo Benítez Gautier, it appears that "Quintero y Dávila, Limitada" was originally constituted, under that firm name, by deed No. 25 executed May 20, 1929, before notary Salvador Suau, for a period of nine years to expire

---

have considered, in some cases—under varied situations of fact—that a community of property constitutes a *partnership* (*sociedad*) for tax purposes, *Buscaglia, Treas.* v. *Tax Court*, 70 P.R.R. 93; *Buscaglia, Treas.* v. *Tax Court*, 70 P.R.R. 449 (partnership (*sociedad*) and *not* community prior to January 1, 1940, but a *joint venture* thereafter); *Calaf* v. *Tax Court*, 73 P.R.R. 758; and in others, that it does not constitute a partnership (*sociedad*), *Puig* v. *Tax Court*, 65 P.R.R. 691; *Vías* v. *Tax Court*, 67 P.R.R. 459.

on June 30, 1938, its members being Concepción Díaz widow of Dávila, Juan Dávila Díaz, and Arturo Quintero Menéndez. After the death of the latter, his heirs, together with the former members of "Quintero y Dávila, Limitada," constituted—by the said deed of September 16, 1937—a new partnership (*sociedad*), as successor of the former, under the same firm name of "Quintero y Dávila, Limitada," for a period of eight years which would commence on July 1, 1938 and terminate on June 30, 1946. Its purpose was to engage in agricultural operations in general, to which end it could lease, purchase and sell all kinds of personal and real property, make all kinds of contracts in respect thereto, to assume all kinds of obligations, real or personal, and to carry out all lawful operations aimed at accomplishing the purpose for which it was created.

It was provided that the capital stocks, according to the class of partnership (*sociedad*), would be limited, and it was fixed at the sum of $75,000, to be contributed by each one of its members in the proportion agreed upon; the capital could be increased up to the sum of $100,000, by resolution adopted by a majority at a general stockholder's meeting, by virtue of which each one would contribute his corresponding portion in the same proportion as his original contribution. Each one bound himself to deposit in cash, within 30 days after July 1, 1938, 75 per cent of the sum which he would have to contribute to the corporate stock, the remaining 25 per cent, or the portion which the managing partner would determine, to be paid from time to time as the needs of the partnership (*sociedad*) would demand, in the opinion of the said managing partner.

The corporate liability was limited "to the amount of the authorized capital, and the member's liability to the sum contributed by each, plus the amount which he may thereafter contribute and actually contributes, pursuant to the terms of this deed."

There were designated two managing partners with the right to use the firm name, one of them—intervener herein—being designated general manager not only with powers of administration but also with full powers to purchase, sell, and exchange personal and real property, and to exercise, in general, all acts of dominion in connection with the properties, rights, and actions of the partnership, and also with powers of representation—as plaintiff or defendant, or in any other capacity—in matters of all kinds in which it may have a direct or indirect interest.

The general stockholders' meeting could be validly constituted only when not less than one half of the capital stock was represented therein, and the resolutions had to be adopted by a majority vote, each $1,000 representing one vote. The death "of any one of the members" would not cause the dissolution of the partnership (*sociedad*), but the latter would continue to exist until the expiration of the period for which it was constituted, despite the fact that it was agreed that the heirs of the deceased would have the right to a proportional share of the earnings corresponding to the deceased's capital, and that the heirs, or their representative, could attend the stockholders' meeting and participate in the administration of the corporation. A member could convey or sell, or in any other manner transfer, his capital or corporate assets to a nonmember, only if none of the members wished to acquire it.

It provided that at the end of each year's transactions a trial balance would be prepared, and that out of the earnings, if any, 10 per cent be set aside for reserve and the remainder would be distributed in proportion to the sum contributed to the corporate stock. If there be any loss, each member would then be liable in equal proportion. The managing partner was charged with liquidation of the partnership (*sociedad*).

## III

The Treasurer's main contention is that our Civil Code and our Code of Commerce do not authorize the organization of a partnership (*sociedad*) limiting the liability of *all* the members; that any clause to that effect in a corporate contract is null and void; and, consequently, that since a partnership (*sociedad*) with such limitation of liability can not be validly organized in Puerto Rico, "Quintero y Dávila, Limitada" can not be considered as one of the *limited partnerships* (*compañías limitadas*) included by § 2(a) (2) of the Act in the term "corporation." [4] According to the Treasurer, the said § 2(a) (2) merely enumerates the entities, organized in Puerto Rico or abroad, whose income derived from their operations and subject to tax under the law, shall be taxed as in the case of corporations, and that such section does not authorize the organization in Puerto Rico of any other juridical entities except those included in the provisions of the Civil Code or the Code of Commerce. In his opinion —after eliminating from the latter Code the stock companies (*sociedades anónimas*), according to Act No. 42 of April 25, 1930 (Sess. Laws, p. 320)—the only company with limited liability which may be organized in Puerto Rico is a special partnership (*sociedad en comandita*), in the manner and to the extent provided by the said Code.

In his brief to this Court, the Treasurer maintains that, according to the deed of constitution, "Quintero y Dávila, Limitada" *is not* one of the commercial companies (general or special) authorized by our Code of Commerce; that, by its object, it *is* a civil partnership (*sociedad*), and, the clause limiting the liability of all its members being null and void, since this is not one of the attributes of such partnerships (*sociedades*), such clause does not divest that entity of its character of civil partnership (*sociedad civil*).

---

[4] *Limited companies* (*compañías limitadas*) remain included in the term "corporation" under § 411(a) (2) of the Income Tax Act of 1954.

## IV

It is not a function of the tax law to lay down legal rules for determining the validity of the entities which it subjects to taxation; that is a function of civil, mercantile, or corporation law. But the tax law does recognize and classify pursuant to its own rules, in the practical sphere in which it evolves, the existence of those entities as taxable creatures.

Independently of the requirements or limitations that the civil or mercantile law might impose on an association of two or more persons in order that it may attain the juridical personality of a partnership (*sociedad*) or company, the tax law, in its function of realities, furnishes the necessary solution by attacking the problem with objective criterion: whether or not it is an entity whose legal existence conforms to the formalities of the civil or mercantile law, the special statute imposes on it the burden of its tax liability in conformity with its own classification. That is why the law includes in the term *partnership* (*sociedad*) all kinds of partnerships (*sociedades*), whether or not constituted by public deed, and the so-called joint venture for profit; and in the term *corporation* it includes, in addition to private corporations, as such, other entities which it expressly designates, among them the *limited partnerships* (*compañías limitadas*).

## V

Although we are not determining here the legal existence, from the point of view of the civil or mercantile law, of a *limited partnership* (*compañía limitada*), let us examine, however, the Treasurer's contention that, under the present state of a corporate right which, like ours, is governed by a Civil Code and by a Code of Commerce, it is not possible to admit, not even for the purposes of the tax statute, the existence of a local entity in which the liability of all its members is limited.

In Spanish law, under a system of Civil Code and Code of Commerce essentially the same as ours, a contract limiting the liability of all the partners to the corporate contribution only is considered valid in civil as well as in mercantile partnerships (*sociedades*), for as long as there is no total exemption from liability, it is permitted by § 1691 of the Civil Code—§ 1582 of our Code—[5] except that limitation may operate against a third party only if the latter has sufficient notice of such limitation. 25 Scaevola, *Código Civil*, Part II, 144–45; 25 *id.*, Part I, 418; De Buen, *Sociedad*, in 28 *Enciclopedia Jurídica Española* 871.[6]

The existence of limited-liability partnerships (*sociedades de responsabilidad limitada*), whose essential characteristic is the limitation of the liability of *all* its partners to their contribution to corporate capital, which is divided into *contributions* and not shares, has also been admitted in Spanish law as one of the exceptional forms not included in the three forms authorized by § 122 of its Code of Commerce

---

[5] Section 1582 of our Civil Code:

"An agreement in which one or more of the partners are excluded from any share in the profits or losses is void.

"Only the partner contributing his services but no capital may be exempted from any liability in the losses."

[6] Citing from Ponsá y Gil, *Sociedades Civiles Mercantiles, Cooperativas y de Seguros*, Vol. I (1911), p. 147, Demófilo de Buen, in his contribution in the *Enciclopedia Jurídica Española*, Vol. 28, p. 871, expresses the same opinion on the validity of a contract limiting the liability of all the partners in an ordinary civil partnership: "Ponsá y Gil is of the opinion, which we share, that the members are at liberty to limit their responsibility as well as to make all kinds of stipulations regarding losses and profits, with the exception of the prohibition set forth in § 1691. In order that that limitation may be effective against a third party, it must be made known to him at the time of contracting; once the creditor learns of this limitation—he adds—he may not proceed against a partner's private property, and, following the general rule that the liabilities of the debtors are not solidary, he may not hold the other partners responsible for that part of the debt which may correspond to a partner who bound himself limitedly to form part of the partnership."

Gay de Montellá recognizes, under the same rule, that "although the sharing in the losses is essential in a partnership contract, such sharing may be limited by the covenant, for a limitation *does not represent an exemption from liability.*" 2 Gay de Montellá, *Código de Comercio* 23.

—101 of our Code, which includes only its regular general partnership (*regular colectiva*) and the special partnership (*comanditaria*)—without such limitation affecting the use of their names in the firm name.[7]

## VI

We can not agree with the Treasurer that, when the law includes limited partnerships (*sociedades limitadas*) in the term *corporation* used in § 2 (*a*) (2), it refers to those entities which having been organized as such in their state or country of origin come to Puerto Rico to do business here. Limited partnerships (*sociedades limitadas*) in American law,[8] whether or not they partake of the same fundamental structure as the special partnerships (*compañías en comandita*) recognized by our Code of Commerce, would be included, by express provision of the statute, in the term "corporation" used in § 2 (*a*) (2) of the Act, while those organized in Puerto

[7] This type of partnership (*sociedad*) is similar to the system of *sociedades personalistas*, as distinguished from financial partnerships, in which the principle of limitation of liability of all the partners is engrafted. Judgments of the Supreme Court of Spain of November 17, 1928, July 5, 1941, and February 18, 1948. See Juan Ríos Sarmiento, *Compañía Mercantil*, in 1 *Diccionario de Derecho Privado* 1003 et seq.

For a comparative study of the origin and historical development of Limited Liability Partnerships (*Sociedades de Responsabilidad Limitada*), see, also, 1 Garrigues, *Tratado de Derecho Mercantil* 1139 et seq.; 3 Benito, *Derecho Mercantil* 349 et seq. (1929); 2 Gay de Montellá, *op. cit.* 87 et seq., Wieland, *La Sociedad de Responsabilidad Limitada*, in 19 *Revista de Derecho Privado* 241 et seq.; Pérez Serrano, *La Proyectada Reforma del Código de Comercio*, in 14 *Revista de Derecho Privado* 3 et seq.; and Note by Profesor Ricardo Gullón, in 25 *Revista Jurídica de la Universidad de P. R.*, on the work by Gay de Montellá, *La Sociedad de Responsabilidad Limitada* (1954), under the new Act of July 17, 1953, relative to this type of partnership (*sociedad*).

[8] Even though in American law the limited partnership (*compañía limitada*) was identified originally with the special partnership (*sociedad en comandita*) of the French Code of Commerce, passing from the Louisiana territory to the State of New York and from the latter to other states— see commentaries of Felipe de Sola Cañizares, "*La 'Partnership' y la 'Limited Partnership' en Inglaterra y en los Estados Unidos*," in 3 *Cuadernos de Derecho Angloamericano* 81, 92, and *Sociedades en el Derecho Angloamericano* (Partnerships in Anglo-American Law), in 4 *op. cit.* 51, 67; Gay de Montellá, *op. cit.* 85—its principal characteristic, consistent with

Rico would be included in the term "partnership" (*sociedad*) used in § 2(*a*) (3). Organizations or entities of the same nature would not be accorded the same treatment, from the tax point of view, if those organized here were considered as *partnerships* (*sociedades*) and those organized in like manner, but not under the local law, as *corporations*.

## VII

In including *limited partnerships* (*compañías limitadas*) in the term "corporation," our tax law merely recognized any agreement which in the contract might limit the liability of all the members to their respective contributions—which is not prohibited by § 1582 of the Civil Code—without at the same time investing such entities with juridical personality, for it is one thing to recognize an agreement and another thing to attribute to a partnership (*sociedad*), as against third parties, the characteristics proper of a juridical person.

## VIII

In view of the foregoing, we hold that "Quintero y Dávila, Limitada" was, in the tax year in litigation, according to its corporate contract, a *limited partnership* (*compañía limitada*) within the meaning of § 2(*a*) (2) of the Income Tax Act, and, consequently, that it was included, for tax purposes, in the definition of the term "corporation" used in that Act, and that taxpayer Juan Dávila Díaz was not bound to include in his individual income-tax return for that period the undistributed profits realized by that entity in the year in question.

The judgment will be affirmed.

Mr. Justice Sifre did not participate herein.

its origin, being the responsibility of some, but not all, of the members (as is the case with the Uniform Limited Partnerships Act, 8 U.L.A., Limited Partnership) the states of Pennsylvania, Michigan, Ohio, Virginia, and New Jersey authorized the creation of companies with limitation of liability of all the members. Eder, *Limited Liability Firms Abroad*, 13 U. of Pitts. L. Rev. 193, 212–13; Warren, *Corporate Advantages Without Incorporation* 302 *et seq.*, 511 *et seq.*